**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

CHRISTY CARTY, INDIVIDUALLY AND        §
AS NEXT FRIEND FOR BRYCE CARTY,        §
JUSTICE CARTY AND MADDY CARTY,         §
MINORS AND AS REPRESENTATIVE OF        §
THE ESTATE OF JIMMY CARTY, JR.,        §
DECEASED,                              §
      Plaintiffs,                    §
                                       §
v.                                     §   CIVIL ACTION NO. 2-06-CV-138 (TJW)
                                       §
TEXAS DEPARTMENT OF PUBLIC             §
SAFETY, COMMANDER ALBERT               §
RODRIGUEZ, LIEUTENANT ERWIN            §
BALLARTA, KIM PACIFIC MARTIAL          §
ARTS AND RINGSIDE, INC.,               §
      Defendants.                    §

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christy Carty brings suit individually and as next friend for her children against defendants, the Texas Department of Public Safety ("DPS"), and two individual DPS officers, Commander Albert Rodriguez ("Rodriguez"), and Lieutenant Erwin Ballarta ("Ballarta"). Plaintiffs also bring claims against two products manufacturers, Kim Pacific Marital Arts and Ringside, Inc. Before the Court is a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim (#14) by DPS, Rodriguez, and Ballarta ("Defendants"). The Court has considered the parties' written submissions, and DENIES the motions in part and GRANTS the motions in part for the reasons set forth in this opinion.

**I.  Background**

Christy Carty, a resident of Van Zandt County, is the surviving spouse of Jimmy Carty. She brings this action in her individual capacity, as next friend for her children, and as the representative

of her late husband's estate.  DPS is a law enforcement agency in the State of Texas.  Defendant
Rodriguez is the Commander of the DPS Training Academy, and Defendant Ballarta is the Defense
Tactics Coordinator for the DPS Training Academy.  Defendant, Kim Pacific Marital Arts is a
products liability defendant in this action.  It is a California Corporation with its principal place of
business there.  Defendant, Ringside, Inc., an additional products liability defendant in this action,
is a Kansas Corporation with its principal place of business there.  Both products defendants sell the
accused products in the Eastern District of Texas.  Ballarta and Rodriguez both live and work in
Austin, Texas in the Western District of Texas.

Jimmy Carty, was a member of a training class for the Texas DPS, and enrolled in the DPS
Training Academy in Austin, Texas. He was injured as part of the DPS training called "arrest and
control tactics drill" on May 19, 2005.  He sustained head and brain injuries during this drill, and
died on May 26, 2005.

Kim Pacific Martial Arts made the headgear worn by Jimmy Carty when he was injured, and
Ringside made the boxing gloves worn in the incident.  Plaintiffs claim the products manufacturers
negligently designed, manufactured, constructed, assembled, and inspected their products.  Plaintiffs
bring suit against DPS and the individual state actor defendants under 42 U.S.C. §§ 1983, 1985, and
1986.  Specifically, the plaintiffs claim the Defendants' actions in the active countermeasures drill
directly led to the head injury and subsequent death of Jimmy Carty.  This, they say, violated Jimmy
Carty's constitutional right to bodily integrity and life guaranteed by the Fourteenth Amendment to
the United States Constitution.  Moreover, plaintiffs contend that DPS knew of the high risks
involved with the drill, and decided to turn a blind eye to those risks.  Plaintiffs further contend that
because the Defendants knew of the risks involved, they had a duty under the Fourteenth

2

Amendment to establish and implement policies, practices and procedures designed to assure that Jimmy Carty's substantive due process rights to bodily integrity and life were protected.

## II.   Motion to Dismiss for Failure to State a Claim

### A.   Due Process Claims

Defendants argue that the plaintiffs do not state a valid due process claim; partly because Jimmy Carty was not a prisoner or a pre-trial detainee. Defendants fail to recognize the settled law that the Due Process Clause not only affords the people *served* by government's protections from an abridgement of the Constitution, but also *employees* of the government. *Collins v. Harker Heights*, 503 U.S. 115, 120 (1992). Although Defendants base their argument on *Harker Heights,* this case is different from *Harker Heights.*

In *Harker Heights*, the Court recognized that it had "always been reluctant to expand the concept of substantive due process . . . ." *Id*. at 125. Accordingly, it was important to focus on the allegations in the case to determine how the "petitioner describe[d] the constitutional right at stake and what the city allegedly did to deprive her husband of that right." *Id*. Specifically, in *Harker Heights* the plaintiff alleged that the state did not properly train her husband, and did not provide a safe place for him to work, which led to his death. The Supreme Court held that the Due Process Clause did not impose "an independent substantive duty upon municipalities to provide certain minimal levels of safety and security in the workplace." *Id*. at 126.

The Supreme Court held that no constitutional violation claim could be made because the plaintiff had only made a general allegation that the city had failed to provide a safe place to work, and properly train her husband. *Id*. at 126-27. The plaintiff had "not even allege[d] that his supervisor instructed him to go into the sewer when the supervisor knew or should have known there

3

was a significant risk that he would be injured." *Id*. at 125.

The Court in *Harker Heights* also found that the City's failure to warn its employees of the risks or adequately train its employees was not "arbitrary, or conscience shocking, in a constitutional sense." *Id*. at 128. This finding "rest[ed] on the presumption that the administration of government programs is based on a rational decision making process that takes account of competing social, political, and economic forces." *Id*. Decisions on training and compensation are difficult decisions that require many policy choices that should be made by the employer, and not the judiciary. *Id*.

The allegations in the case at bar differ from those in *Harker Heights*. The plaintiffs are not making general allegations that DPS failed to provide a safe workplace, but that DPS adopted and implemented policies, practices and procedures that violated Jimmy Carty's substantive due process rights to bodily integrity and life. Specifically, the complaint alleges that this policy of conducting the counter measure drill was perpetuated by DPS and its employees after they knew of the high risks involved with conducting the drill. *Plaintiffs' First Amended Complaint* at 5-6. Further, the drill was a condition of continued employment. *Id*.

Also, the Supreme Court found there was nothing "conscience shocking" about the training procedures implemented by the city in *Harker Heights*. This cannot necessarily be said for the present case. When the actions that caused the injury fall within a middle range between negligence and intentional conduct, the point of conscience shocking will depend on the circumstances of the case and whether the defendant had the opportunity to deliberate before engaging in the challenged conduct. *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). For example, deliberate indifference by government actors may impose due process liability. *Hare v. City of Corinth*, 74 F.3d 622 (5th Cir. 1996) (en banc); *Brown v. Nationsbank Corp.*, 188 F.3d 579 (5th Cir. 1999). In

4

this case, there are allegations in the complaint that Defendants were very aware of the dangers involved with the counter measures drill as evidenced by the 121 traumatic brain injuries suffered by DPS recruits since 1971 as a result of the drill.  *Plaintiffs' First Amended Complaint* at 4.  In addition, the plaintiffs allege that no other law enforcement agency in the country uses this particular drill as part of their training.  *Id.* at 5.  The allegations, taken as true at this early motion to dismiss stage, are sufficient to allege conduct which shocks the conscience.  Therefore, the motion to dismiss the plaintiffs' due process claims is DENIED.

### B.    Conspiracy Claims

Defendants also move to dismiss the conspiracy claims.  Government entities and their employees cannot conspire among themselves.  *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998).  This is because the entity and its employees constitute a single legal entity.  *Id.*  This rule however does not completely embrace the plaintiffs' allegations.  The plaintiffs allege not that the individual officers as a collective conspired with DPS, but that "DPS and the State Actor Defendants have conspired . . . ."  *Plaintiffs' First Amended Complaint* at 9.  It is not clear from the complaint whether the plaintiffs intended to plead that the individual officers conspired with each other, as opposed to conspiring with the entity itself.

Additionally, however, it is the law in this Circuit that § 1985(3) claims require an allegation of a race-based conspiracy.  *Bryan v. City of Madison, Mississippi*, 213 F.3d 267, 276 (5th Cir 2000).  The plaintiffs have not made allegations of any race based conspiracy; therefore, their §§ 1985 and 1986 claims cannot stand.  This does not mean that there can be no conspiracy to deprive one of their constitutional rights unless the conspiracy is race based.  The action just cannot fall within the purview of § 1985.  *See Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir. 1963) (explaining how courts

view conspiracy claims under § 1983 different from § 1985).  "Conspiracy is asserted in that situation on more or less traditional principles of agency, partnership, joint venture, and the like."  *Id*.

Because there are elements of conspiracy pleaded in the claims brought by the plaintiffs, the Court grants leave to the plaintiffs to amend their complaint to clarify their pleadings and to allege a conspiracy that does not fall within § 1985, if that is what they so choose.  The motion to dismiss the plaintiffs' §§ 1985 and 1986 claims is GRANTED with leave to amend to assert a conspiracy to violate 42 U.S.C. § 1983.

### C.    Duty to Protect / Special Relationship

Plaintiffs claim that DPS owed Jimmy Carty a duty to protect him because of a "special relationship" between the government and Carty.  Defendants have opposed this in a motion to dismiss.  Plaintiffs have cited no case law, statute, or authority to support their position that a "special relationship" existed between DPS and its employees.  The Court assumes the lack of response on the part of the plaintiffs to the defendants' motion is a concession that this is not a valid claim in this Circuit.  Therefore, the motion to dismiss the plaintiffs' duty to protect/special relationship claims is GRANTED.

## III.    Immunity

### A.    Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Therefore, the Amendment bars suits brought in

6

federal court against States.  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  This bar also applies to suits against a state agency or department.  *Clark v. Tarrant County*, 798 F.2d 736, 743 (5th Cir. 1986).

### 1.    Texas Department of Public Safety

DPS now moves to dismiss the plaintiffs' claims based on Eleventh Amendment immunity. It is undisputed that DPS is a state agency for the State of Texas.  Therefore, DPS is entitled to Eleventh Amendment immunity.

An individual may still sue a State or its agency under two circumstances.  *Meyers ex rel. Benzing v. Texas*,  410 F.3d 236, 241 (5th Cir. 2005) (citing *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board ,* 527 U.S. 666, 670 (1999)).  First, Congress may specifically authorize a suit against a State in the exercise of its power to enforce the Fourteenth Amendment.  *Id.* (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976)).  Second, a State may waive its sovereign immunity by consenting to suit.  *Id.* (citing *Clark v. Barnard,* 108 U.S. 436 (1883)).

The plaintiffs do not argue that either of these exceptions exist in their claim against DPS. Accordingly, the Court GRANTS Defendants' motion and dismisses all claims against DPS based on Eleventh Amendment immunity.

### 2.  Commander Albert Rodriguez and Lieutenant Erwin Ballarta in their Official Capacities

The plaintiffs have also brought suit against Rodriguez and Ballarta in their official capacities as officers for DPS under the *Ex parte Young*, 209 U.S. 123 (1908), doctrine.  Defendants Rodriguez and Ballarta move to dismiss the plaintiffs' claims by claiming Eleventh Amendment immunity.

Official capacity suits "generally represent only another way of pleading an action against

7

an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 648, 690 n. 55 (1978).  The real party in interest is the government entity and not the named official.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, the Eleventh Amendment normally bars suits against state officers in their official capacities because the state is a party in fact.  *See Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982))*.*  However, the doctrine of *Ex parte Young* does not allow a state officer to claim Eleventh Amendment immunity for a claim that he deprived another of a federal right under the color of state law.  *Id*.  For *Ex parte Young* to apply, the court must first determine whether the complaint alleges an ongoing violation of federal law and whether the plaintiffs seek prospective relief.  *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1995) (citations omitted). Any claim for money damages against defendants in their official capacities is barred by the Eleventh Amendment.  *Ganther*, 74 F.3d at 210 (citations omitted).

Here, the plaintiffs allege that the conduct of Rodriguez and Ballarta as state officers violated Jimmy Carty's constitutional rights, and they are seeking injunctive relief.  *Plaintiffs' First Amended Complaint* at 8-9.  When ruling on motions to dismiss, the facts are construed by the Court in light most favorable to the nonmoving party.  Notwithstanding these allegations, Defendants contend that DPS has already implemented recommendations from a study performed by the Gable Group.  *Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss* at 6 n.2.  As a result of this change in DPS policy and practice, the injunctive relief sought by the plaintiffs could be moot.  The Court will discuss at the Scheduling Conference what, if any, discovery should be

permitted on these claims, in light of the Defendants' representations.  The motion dismiss the claims against Rodriguez and Ballarta in their official capacities is DENIED at this time.

**B.     Qualified Immunity - Commander Albert Rodriguez and Lieutenant Erwin Ballarta in their Individual Capacities**

Plaintiffs have also sued Rodriguez and Ballarta in their individual capacities.  Defendants Rodriguez and Ballarta move to dismiss the plaintiffs' claims by asserting the affirmative defense of qualified immunity.

Personal capacity suits impose individual liability on a government officer for actions taken under color of state law.  *Graham*, 473 U.S. at 165.  To establish personal liability in a § 1983 claim against an official, the plaintiffs only need to show that "the official, acting under color of state law, caused the deprivation of a federal right.  *Id*. at 166.  However, qualified immunity will shield a government official performing discretionary functions if a reasonable official could have believed that his or her actions were lawful in light of clearly established law at the time and the information the official possessed.  *Harlow*, 475 U.S. at 818; *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987).

The initial inquiry in determining whether an official is entitled to qualified immunity is whether the plaintiffs claim a violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If such a right has been violated, the court must determine if the right was clearly established at the time of the events and if the conduct was objectively reasonable.  *Id*.; *Harlow*, 457 U.S. at 818. In this case, the plaintiffs have made specific allegations that Rodriguez and Ballarta implemented policies, practices and procedures that violated Jimmy Carty's substantive due process rights guaranteed by the Fourteenth Amendment.  Viewing these allegations in a light most favorable to

9

the plaintiffs, Jimmy Carty's Fourteenth Amendment rights were clearly established at the time of the incident. Furthermore, as officers for DPS, Rodriguez and Ballarta knew or should have known that their conduct, in implementing training which had a long history of a high risk of head injury, was unlawful. At this stage, viewing the allegations in the light most favorable to the plaintiffs, the Court is unwilling to grant a qualified immunity defense. The Court will, however, limit discovery to the question of qualified immunity and will permit the defendants to renew their arguments in motions for summary judgment after the completion of that discovery. The motion to dismiss the claims against Rodriguez and Ballarta in their individual capacities is DENIED without prejudice.

## IV. Subject Matter Jurisdiction

### A. Due Process Claims

Defendants argue that the plaintiffs have failed to articulate any violation of a specific constitutional right and, as a result, cannot bring a claim under 42 U.S.C. § 1983. As discussed above, the plaintiffs have alleged proper due process claims. Therefore, this court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331.

### B. Wrongful Death Claims

Defendants also move to dismiss wrongful death and survival claims for lack of subject matter jurisdiction. *Defendants' Motion to Dismiss* at 8-9. The plaintiffs acknowledge that the wrongful death and survival claims apply only to the Product defendants. *Plaintiffs' Response to Defendants' Motion to Dismiss* at 9. Therefore, Defendants' motion to dismiss wrongful death and survival claims against DPS, Rodriguez, and Ballarta is GRANTED.

## V. Conclusion

The Court GRANTS the motion to dismiss all claims against DPS based on Eleventh

Amendment immunity.  At this point, the Court DENIES the motion to dismiss all claims against Rodriguez and Ballarta in their official capacities.  The Court also DENIES the motion to dismiss all claims against Rodriguez and Ballarta in their individual capacities.

The Court DENIES the Defendants' motion to dismiss the plaintiffs' due process claims. The Court GRANTS the Defendants' motion to dismiss the plaintiffs' §§ 1985 and 1986 conspiracy claims, but will allow the plaintiffs leave to amend their conspiracy complaint, if they so choose, to allege a conspiracy to violate § 1983.  The Court also GRANTS the Defendants' motion to dismiss the plaintiffs' duty to protect/special relationship claims.

The Court GRANTS Defendants' motion to dismiss the plaintiffs' wrongful death and survival claims against DPS, Rodriguez, and Ballarta.


SIGNED this  6th  day of October, 2006.


_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

11