IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

CHRISTY CARTY, Individually and as Next §
Friend for Bryce Carty, Justice Carty and §
Maddy Carty, Minors and as Representative §
of the Estate of Jimmy Carty Jr, Deceased §
    *Plaintiffs*, §
§
v. §
§ CIVIL ACTION NO. 2-06-cv-138-TJW
TEXAS DEPARTMENT OF PUBLIC §
SAFETY, COMMANDER ALBERT §
RODRIGUEZ, LIEUTENANT ERWIN §
BALLARTA, et al, §
    *Defendants*. §
§

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Before the Court are various motions filed by the parties in this case. (Dkt. Nos. 129, 137, 150, 151, 160 & 170.) The State Office of Risk Management's (SORM) motion for entry of judgment under Rule 54(b) (Dkt. No. 129) is DENIED, and as a result, SORM's motion for a hearing (Dkt. No. 137) is DENIED as moot. Defendants' motion to dismiss for improper venue and motions to transfer are also DENIED. (Dkt. Nos. 150 & 151.) Defendants' motions to dismiss on the basis of qualified immunity are DENIED. (Dkt. Nos. 149 & 160.) Defendants' motion to dismiss DPS and motion to dismiss the official capacity claims against Rodriguez and Ballarta are GRANTED without prejudice for plaintiffs to amend their complaint to include the correct officials within sixty (60) days. (Dkt. No. 170.)

**II.    BACKGROUND**

Christy Carty, a resident of Van Zandt County, is the surviving spouse of Jimmy Carty. She brings this action in her individual capacity, as next friend for her children, and as the

1

representative of her late husband's estate. Jimmy Carty's children, Bryce, Justice, and Maddy, are also named plaintiffs in this case. Defendant Texas Department of Public Safety ("DPS") is a law enforcement agency in the State of Texas. Defendant Rodriguez is the Commander of the DPS Training Academy, and Defendant Ballarta is the Defense Tactics Coordinator for the DPS Training Academy.

Ballarta and Rodriguez both live and work in Austin, Texas in the Western District of Texas. Jimmy Carty was a member of a training class for the Texas DPS, and enrolled in the DPS Training Academy in Austin, Texas. He was injured as part of the DPS training called "arrest and control tactics drill" on May 19, 2005. He sustained head and brain injuries during this drill, and died on May 26, 2005.

Plaintiffs bring suit against DPS and the individual state actor defendants under 42 U.S.C. § 1983. Specifically, the plaintiffs claim the Defendants' actions in the active countermeasures drill directly led to the head injury and subsequent death of Jimmy Carty. This, they say, violated Jimmy Carty's constitutional right to bodily integrity and life guaranteed by the Fourteenth Amendment to the United States Constitution.

This case was filed on April 5, 2006 and has been proceeding for over four years at this point. There have been multiple appeals, multiple orders by this Court dismissing various parties, and many other orders on other various motions filed by the parties in this case. This Memorandum Opinion and Order addresses several motions that have been pending in this Court since the most recent appeal—where the Fifth Circuit remanded various issues to this Court for further proceedings on February 22, 2010. (Dkt. No. 142.)

## III. DISCUSSION

### A. Motion to Dismiss for Improper Venue

The Court DENIES Defendants' motion to dismiss this cause of action for improper

venue. (Dkt. No. 150.) This motion to dismiss for improper venue is being brought over four years after this case was filed. This Court has already denied a motion to dismiss for improper venue once. (Dkt. No. 35.) Additionally, the defendants filed a petition for writ of mandamus with the Fifth Circuit on that motion and it was denied. (Dkt. No. 68.) The defendants provide no new meaningful changes in the law or facts that warrant any different result. Therefore, the Court DENIES Defendants' motion to dismiss for improper venue for the same reasons the Court explained in its October 6, 2006 Order. (Dkt. No. 35.)

### B. Motion to Transfer

The Court DENIES Defendants' motion to transfer venue. (Dkt. Nos. 150 & 151.) This motion to transfer venue is also being brought over four years after this case was filed. This Court has also already denied a motion to transfer venue once. (Dkt. No. 35.) Additionally, the defendants filed a petition for writ of mandamus with the Fifth Circuit on that motion and it was denied. (Dkt. No. 68.) Unlike motions to dismiss for improper venue, however, there have been recent Fifth Circuit decisions regarding motions to transfer venue that have, at the least, clarified the applicable law. Therefore, the Court performs a new analysis regarding defendants' motion to transfer venue. Defendants seek to transfer this case from the Marshall Division of the Eastern District of Texas to the Austin Division of the Western District of Texas. Upon performing that analysis, the balance of the private and public factors demonstrates that the transferee venue is not "clearly more convenient" than the venue chosen by Plaintiffs. *See In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) (en banc).

#### 1. Legal Standard

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth Circuit has enunciated the standard to be used in deciding motions to

transfer venue. *See Volkswagen II*, 545 F.3d 304. The moving party must show "good cause," and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." *Id.* at 314.

The initial threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). There is no dispute that this case could have been brought in the Austin Division of the Western District of Texas. Because the transferee district is a proper venue, the Court must weigh the relative conveniences of the current district against the transferee district. In making the convenience determination, the Fifth Circuit considers several private and public interest factors, none of which are given dispositive weight. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized [disputes] decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'" *Id.*

    2.    Analysis

        a.    **Private Interest Factors**

            i.    *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first factor to consider, and this factor is neutral. "That access to some sources of proof presents a lesser inconvenience now than

4

it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. The incident at issue occurred in Austin and many documents and physical evidence are located in Austin as a result of this fact. On the other hand, many documents and other types of physical evidence are located in the Eastern District of Texas. Mr. Carty alleges he was interviewed by representatives of the Texas Department of Public Safety in Tyler, Texas. (2nd Am. Compl., Dkt. No. 158, at 3.) Therefore, documents related to his recruitment may be in the Eastern District of Texas. Additionally, plaintiffs allege that the physician and healthcare professionals that conducted the examination of Jimmy Carty are located in the Eastern District of Texas. (*Id.*) Additionally, sources of proof such as friends and family members of Jimmy Carty and other "crucial" witnesses who reside in Marshall that were "victimized by the same policies of the DPS and the State Actor Defendants." (*Id.* at 2.) Therefore, on balance, this factor is neutral.

### ii. Availability of Compulsory Process

The next private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses, and this factor points toward transfer. Rule 45(c)(3)(A)(ii) limits the Court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Volkswagen II*, 545 F.3d at 316. *Volkswagen II* found important that "a proper venue that does enjoy *absolute* subpoena power for both depositions and trial—the Dallas Division—is available." *Id.* (emphasis in original). The Court first observes that both the Eastern District of Texas and the Western District of Texas have subpoena power for trial over all witnesses in Texas. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). Each court, however, only has "absolute" subpoena power over those witnesses that reside within 100 miles from the court. The Austin Division of the Western District of Texas would have absolute subpoena

5

power over the many witnesses at the DPS[1] in Austin, Texas, where the incident at issue occurred in this case, and additionally any first responders and healthcare providers in Austin. (Rodriguez Aff., Ex. 1, Dkt. No. 151.) On the other hand, the Marshall Division of the Eastern District of Texas would have absolute subpoena power over other witnesses. For example, one DPS recruit named Michael Bogue also sustained a head injury and resides in Marshall, Texas. (*See* Pl's Initial Disclosure, attached as Ex. A. to Dkt. No. 156, at 11.) Additionally, other family members of the Plaintiff that are not parties to the lawsuit reside within 100 miles of the Marshall Division of the Eastern District of Texas and Plaintiff has indicated that they may be potential witnesses. (*See id.* at 5-7.) On balance, however, this factor appears to slightly favor transfer because there are more potential witnesses where compulsory process may be needed in Austin than in Marshall.[2]

### iii. Cost of Attendance for Willing Witnesses

Next, the Court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Northern District of Texas, and the Court concludes that this factor is neutral. The Fifth Circuit has explained:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 204-05. The Court must consider the convenience of both the party and non-party witnesses. *See id.* at 204 (requiring courts to "contemplate consideration of the

---

[1] Due to later holdings in this Memorandum Opinion and Order, the DPS is no longer a party in this lawsuit.
[2] But the Court again notes that both courts would have subpoena power over these witnesses for trial.

parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d. 761, 765-66 (E.D. Tex. 2009).

The four living plaintiffs in this case, Mr. Carty's immediate family, all live in Grand Saline, Texas, which is within 100 miles to Marshall, Texas and significantly more distant from Austin, Texas. (*See* Pl's Initial Disclosure, attached as Ex. A. to Dkt. No. 156, at 5.) It would be more convenient for the plaintiffs, as witnesses, to travel to Marshall. Additionally, as discussed above, other family members and former DPS recruits with knowledge of the DPS training procedures are potential witnesses and live closer to Marshall, so it would also be more convenient for them to be in Marshall. On the other hand, the defendants in this case work and reside within the Austin Division of the Western District of Texas. (*See, e.g.*, Rodriguez Aff., Dkt. No. 151, Ex. 1.) Further, as discussed above, there are many witnesses at the DPS in Austin and many first responders and healthcare providers that are potential witnesses and they also reside in Austin. Therefore, this factor is neutral.

*iv.     Other Practical Problems*

Practical problems include issues of judicial economy. The Court often considers the possibility of delay and prejudice if transfer is granted, but delay and prejudice associated with transfer is relevant "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence." *ICHL, LLC v. NEC Corp. of America*, No. 5:08-cv-65, 2009 WL 1748573, at *12 (E.D. Tex. June 19, 2009) (quoting *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003)). This case has been pending for nearly five years in this Court. There have been multiple appeals and this Court has issued many orders relating to substantive and procedural issues in this case—including one order that has denied a different motion to transfer by defendants. Additionally, the defendants filed a petition for writ of mandamus with the Fifth

Circuit regarding this Court's last order denying transfer and it was denied. (Dkt. No. 68.) The parties began discovery in this case over four years ago (*See, e.g.*, Dkt. Nos. 43, 49, 51, 52.), and this discovery has been interrupted multiple times due to appeals in this case. This case has been delayed for far too long and it is time to proceed to trial. Judicial economy further supports this case proceeding in this Court given the Court's substantial familiarity with the case due to the multiple substantive and procedural memorandum opinions and orders this Court has issued. Therefore, this factor strongly weighs against transfer.

### b. Public Interest Factors

#### i. Court Congestion

The Court may consider how quickly a case will come to trial and be resolved. *See Ray Mart, Inc. v. Stock Building Supply of Tex., LP*, 435 F. Supp. 2d 578, 595 (E.D. Tex. 2006). This factor is the most speculative, however, and in situations where several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors. *See id. See also In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (applying Fifth Circuit law). The parties have presented no reason why this factor weighs to one side or another, and the Court finds it to be neutral.

#### ii. Local Interest

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). "Transfer is appropriate where none of the operative facts occurred in the district and where the district has no particular local interest in the outcome of the case." *Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, at *5 (E.D. Tex. Mar. 18, 2010) (Everingham, M.J.). There is a local interest in Austin

due to the incident occurring in Austin and because the persons allegedly responsible for the policies leading to Mr. Carty's death also live in Austin. But there is also a local interest in the Eastern District of Texas. Plaintiff's brief sums up that interest well:

> Clearly the residents of the Eastern District have a significant interest in insuring that their sons, daughters, and neighbors are not deprived of their constitutional rights at the hands of these Defendants. Certainly it is the residents of the Eastern District who have to deal with the consequences of Defendants' wrongful conduct, whether it be the painstaking rehabilitation of Michael Bogue and Joe Hill, or a young widow left to raise three children of her own.

(Pl's Response Br., Dkt. No. 156, at 11.) Therefore, the Court holds that this factor is neutral.

### iii. *Familiarity with the Governing Law*

One of the public interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Western District of Texas and the Eastern District of Texas are equally capable of applying the law in this case. Therefore, this factor is neutral.

### iv. *Avoidance of Conflict of Laws*

There have been no major conflict of laws issues presented in this case, so the Court concludes that this factor is neutral.

## 3. Conclusion

The movant, the defendants in this case, have the burden to show the Western District of Texas is "clearly more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 314. The Fifth Circuit in *Volkswagen II* recognized this "significant burden" and issued a writ of mandamus to transfer only after it found that four of the eight *Gilbert* factors weighed in favor of transfer and no factors weighed against transfer. *Id.* at 316-19. In balancing the *Gilbert* convenience factors in this case, the Court observes that one factor slightly weighs in favor of transfer and one factor strongly weighs against transfer. Therefore, Defendants have not met

their burden in showing the Western District of Texas is "clearly more convenient" than the Eastern District of Texas. The Court DENIES Defendants' motion to transfer venue. (Dkt. Nos. 150 & 151.)

## C. Motion to Dismiss Second Amended Complaint on the Basis of Qualified Immunity

The defendants have filed two motions to dismiss for failure to state a claim on the basis of qualified immunity. (Dkt. Nos. 149 & 160.) The first motion (Dkt. No. 149) is DENIED as moot because Plaintiff has since amended its complaint and Defendants filed a new motion to dismiss to replace this one. The second motion (Dkt. No. 160) is DENIED for the following reasons.

### 1. Legal Standard

By written motion, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but the pleader's obligation to state the grounds of entitlement to relief requires "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The well-pleaded facts must permit the court to infer more than just the mere possibility of misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired, Inc.*, 565

F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

The Supreme Court has recently pronounced two guiding principles in determining whether a complaint can survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim in order to survive a motion to dismiss. *Id.* This second determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity will apply unless the official's conduct violated a "clearly established" constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has set forth a two prong test to resolve government officials' qualified immunity claims. First, a court must decide whether the facts the plaintiff has alleged make out a violation of a constitutional right. *Pearson*, 129 S.Ct. at 816. Second, the court must decide whether the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Specifically, the court must decide whether "the defendant's actions were objectively unreasonable in light of" the clearly

established law. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). The court may address the two prongs in any order. *Pearson*, 129 S.Ct. at 818.

### 2. Analysis

Defendants Rodriguez and Ballarta claim that as government officials they are entitled to qualified immunity and have filed this motion to dismiss for failure to state a claim under Rule 12(b)(6). The defendants spend much of their analysis in their briefs arguing that there is no clearly established "state created danger claim" under the substantive due process clause of the Fourteenth Amendment to the United States Constitution. But the Court need not address that claim because the Court holds that the plaintiffs have sufficiently pled a § 1983 claim against defendants for a violation of Jimmy Carty's constitutional right to bodily integrity and life by defendants' alleged deliberate indifference to those clearly established rights. The Court holds that Defendants Rodriguez and Ballarta are not entitled to qualified immunity.

Under the first prong from *Pearson*, the Court holds that the plaintiffs have adequately pled a violation of Jimmy Carty's constitutional right to bodily integrity and life by defendants' deliberate indifference. The Fifth Circuit in *Hernandez ex. Rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) stated:

> To demonstrate a viable substantive due process claim, in cases involving government action, the plaintiff must show that the state acted in a manner that "shocks the conscience." *County of Sacramento, et al. v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In *Lewis*, the Court emphasized that although "the touchstone of due process is protection of the individual against arbitrary action of the government," in cases dealing with executive action "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id*. at 845-46, 118 S.Ct. 1708. Consistent with those principles, we have generally required plaintiffs to demonstrate that "the defendant state official at a minimum acted with deliberate indifference toward the plaintiff." *McClendon*, 305 F.3d at 326. To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also McClendon*, 305 F.3d at 326 n. 8.

"For an official to act with deliberate indifference, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Further, "under a deliberate indifference standard, 'we may infer the existence of this subjective state of mind from the fact that *the risk of harm is obvious.*'" *Hernandez*, 380 F.3d at 881 (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

The plaintiffs haves sufficiently pled their § 1983 claim with facts showing a deliberate indifference on behalf of the defendants to Mr. Carty's constitutional right to bodily integrity and life. For example, between 1996 and 2005, the plaintiffs claim that the active countermeasures drill caused 57 compensable head injuries, as defined by the Texas worker's compensation statute. (2nd Am. Compl. at ¶ 6.) Many of these injuries included concussions and one particular injury resulted in the injured DPS training members spending nine days in the hospital. (*Id.*) The plaintiffs state that the DPS countermeasures drill at issue resulted in injuries far greater than other law enforcement agencies' training programs. (*Id.* at ¶ 12.) Therefore, due to facts such as these, the Second Amended Complaint states its § 1983 claim as follows:

> 42 USC [sic] § 1983 does protect against abuses of power that do violate federal law. The actions of the DPS defendants in the custom, pattern and practice of the active countermeasures drill directly led to the head injury and subsequent death of Jimmy Ray Carty, Jr. which violated his constitutional right to bodily integrity and life in violation of the Fourteenth Amendment to the United States Constitution.
>
> . . .
>
> The fact that the drill caused numerous head injuries to the officer candidates was well known to the DPS defendants. The fact that the DPS defendants continued to conduct the drill in the face of it causing the numerous head injuries over the years establishes their deliberate indifference to the clearly established

> constitutional right to bodily integrity and life.

This pleading meets the *Iqbal* and *Twombly* standard of stating a plausible claim for relief. The Complaint alleges, as noted in the quote above, that the defendants were aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists. In addition, given the 57 compensable injuries over the previous 10 years, the existence of this subjective state of mind may be inferred from the fact that the risk of harm is obvious. Therefore, the first prong of the Supreme Court's test for qualified immunity claims is met.

The second prong—that the constitutional right was "clearly established" at the time of the defendant's alleged misconduct—is also met. It was clearly established in 2005, the time of the alleged misconduct, that there is a constitutional right to bodily integrity and life. *See, e.g.*, *Doe v. Rains Cnty. Indep. School Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995); *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002); *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (2004) ("This court has consistently held that 'the right to be free from state-occasioned damage to a person's bodily integrity is protected by the [F]ourteenth [A]mendment's guarantee of due process.'") (citing *Doe v. Taylor Ind. School Dist.*, 15 F.3d 443, 450-51 (5th Cir. 1994)). In addition, it was clearly established in 2005 that this constitutional right may be violated, giving rise to a Section 1983 claim, when a government official shows deliberate indifference to the right. *See, e.g.*, *Doe v. Taylor Ind. School Dist*, 15 F.3d at 453; *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005) ("[S]upervisors may be liable for constitutional violations committed by subordinate employees when supervisors act, or fail to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates."); *Guillory v. Thomas*, 355 Fed. Appx. 837, 841 (5th Cir. 2009); *Brown v. Callahan*, 632 F.3d 249, 255 (5th Cir. 2010).

The Court decides that the defendants' conduct in this case, by viewing the facts in the complaint as true, was objectively unreasonable in light of this clearly established law. It was clearly established in 2005 that a government official may not show deliberate indifference to one's constitutional rights, such as the constitutional right to life and bodily integrity. The complaint's facts, if true, show that the defendants continued the countermeasures drill at issue despite 57 compensable injuries over the previous ten years. As indicated above, many of these injuries were very serious. A jury may find that the defendants were deliberately indifferent to the plaintiff's constitutional rights of bodily integrity and life by continuing the countermeasures drill despite these known risks.

Therefore, Defendants Rodriguez and Ballarta are not entitled to qualified immunity and the defendants' motion to dismiss on that basis is DENIED.

### D. Motion to Dismiss Texas Department of Public Safety

The Court GRANTS the motion to dismiss Defendant Texas Department of Public Safety. (Dkt. No. 174.) As the Court stated in its original Order on the motion to dismiss (Dkt. No. 36), the Texas Department of Public Safety is a state agency and is entitled to Eleventh Amendment immunity.

### E. Motion to Dismiss Claims Against Rodriguez and Ballarta in Their Official Capacity

The Court GRANTS the motion to dismiss the claims against Rodriguez and Ballarta *in their official capacity* for injunctive relief. (Dkt. No. 174.) Defendants Rodriguez and Ballarta seek a dismissal of these claims because they are no longer employed in their positions with the DPS. Plaintiffs apparently are unopposed as they state "Plaintiffs seek injunctive relief against those officials who have authority over the active countermeasures drill" and that "Defendants'

Motion to Dismiss the official capacity claims is the first notice to Plaintiffs that Ballarta and Rodriguez are no longer employed in their positions with the DPS." (Dkt. No. 174, at 2.) Plaintiffs state that as soon as they are provided the identity of those individuals (i.e., state officials) with authority over the DPS training program that they will amend their complaint to join those individuals. Therefore, the Court GRANTS the motion to dismiss regarding the official capacity claims against Rodriguez and Ballarta without prejudice for Plaintiffs to re-plead within sixty (60) days to add the appropriate state officials. Additionally, the Court grants limited discovery for the Plaintiffs in order for them to seek information regarding the identity of the officials with authority over the DPS training program.

### F.  Motion for Entry of Judgment under Rule 54(b)

The Court denies the motion for entry to judgment under Rule 54(b) (Dkt. No. 126) by the State Office of Risk Management (SORM). Intervenor, the SORM, seeks to declare the September 25, 2007 Memorandum Opinion and Order and the September 28, 2007 Judgment and Order Approving the Minor's Settlement as Final Judgments. (Dkt. No. 129.)

Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." The procedure under Rule 54(b) "should be sparingly and deliberately used for it brings parts of a case before the court seriatim." *Jasmin v. Dumas*, 726 F.2d 242, 244 (5th Cir. 1984). Additionally, "[e]ntry of the Rule 54(b) order is discretionary." *Id.* Many courts have considered a number of factors in determining whether to enter final judgment as to only some parties or claims: (1) the relationship between the adjudicated and unadjudicated claims;

(2) the possibility of mootness on appeal due to further developments in district court; (3) the possibility that the appeals court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; and (5) miscellaneous factors like delay, economic considerations, shortening of trial and frivolity of competing claims, and the like. *Corrosioneering, Inc. v. Thyssen Envtl. Sys.*, 807 F.2d 1279, 1283 (6th Cir. 1986); *Waldorf v. Shuta*, 142 F.3d 601, 609 (3rd Cir. 1998); *Decraene v. United States*, Civ. No. 97-3190, 1999 WL 246708, at *4 (E.D. La. Apr. 26, 1999).

In the present case, by granting SORM's Rule 54(b) motion, the proceedings in the present case would likely be delayed as a result of another appeal. Regardless whether other defendants may proceed while the SORM appeal is being heard, such an appeal would at a minimum further occupy the plaintiffs' time in seeking to resolve this dispute that has been ongoing for almost five years. So the fifth factor counsels against granting the motion. In addition, the third factor points against granting the motion because the appeals court may potentially be obligated to address the issue of SORM's appeal a second time. As discussed in the Court's September 27, 2007 Order approving the Kim Pacific settlement agreement, SORM has the right to suspend future benefit payments to the plaintiffs until that amount is equal to the excess settlement received from the Kim Pacific settlement. (Dkt. No. 126, at 7-8.) Therefore, whether or not the plaintiffs recover from Ballarta and Rodriguez, which is still at issue, may affect how long the SORM is able to suspend its payments. If SORM continued to pay benefits again in the future[3] and then the Ballarta and/or Rodriguez claims resulted in a settlement for

---

[3] As of September 17, 2007, according to the SORM, the Carty children were entitled to $237.30/week benefits for 99 more weeks, after which time, the benefit to which they are entitled would increase to $474.60/week. (*See* Dkt. No. 118, at ¶¶ 9-10.) At that rate, the SORM would

damages, the Court may be forced to perform a similar analysis as it did in its September 27, 2007 Order. The Court DENIES SORM's Rule 54(b) motion (Dkt. No. 129), and accordingly, SORM's motion to set a hearing on that issue is DENIED as moot. (Dkt. No. 137.)

## IV. CONCLUSION

The State Office of Risk Management's (SORM) motion for entry of judgment under Rule 54(b) (Dkt. No. 129) is DENIED, and as a result, SORM's motion for a hearing (Dkt. No. 137) is DENIED as moot. Defendants' motion to dismiss for improper venue and motions to transfer are also DENIED. (Dkt. Nos. 150 & 151.) Defendants' motions to dismiss on the basis of qualified immunity are DENIED. (Dkt. Nos. 149 & 160.) Defendants' motion to dismiss DPS and motion to dismiss the official capacity claims against Rodriguez and Ballarta are GRANTED without prejudice for plaintiffs to amend their complaint to include the correct officials within sixty (60) days. (Dkt. No. 170.)

It is so ORDERED.

SIGNED this 22ndday of February, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

---

be able to suspend its benefit payments to the Carty children for just over four years, due to the Carty children receiving $80,108.67 in excess from the Kim Pacific settlement. Given that at this point in time, in the year 2011, we are approaching four years since the September 17, 2007 date, it is entirely conceivable that the Court will have to perform the exact analysis it performed in its September 25, 2007 Order in adjusting the settlement due to SORM's subrogation lien.